J. ALEXANDER LAWRENCE (CA SBN 208715)
ALawrence@mofo.com
AUSTIN MICHAEL UHLER (CA SBN 319684)
AUhler@mofo.com
JANELLE HYUN (CA SBN 324907)
JHyun@mofo.com
MORRISON & FOERSTER LLP
Shin-Marunouchi Building, 29th Floor
5-1, Marunouchi 1-Chome
Tokyo, Chiyoda-ku  100-6529, Japan
Telephone: +81 3 3214 6522
Facsimile: +81 3 3214 6512

Attorneys for Respondent
EVERSTREAM ENERGY
CAPITAL MANAGEMENT LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF NC DENGEN KAIHATSU KK | Case No. 18-mc-80208-DMR **NOTICE OF MOTION AND MOTION OF EVERSTREAM ENERGY CAPITAL MANAGEMENT LLC TO QUASH OR MODIFY NC DENGEN KAIHATSU KK'S SUBPOENAS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLRATIONS OF PETER HENNESSY AND CHIE YAKURA; [PROPOSED] ORDER** Hearing Date:  June 13, 2019 Hearing Time:  11:00 a.m. Place:  Courtroom to be assigned Before:  Hon. Donna M. Ryu |

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that, on the 13th day of June, 2019, at 11 o'clock a.m., or as

3  soon thereafter as the motion can be heard in the Courtroom of the above entitled Court, located

4  at 1301 Clay Street, Oakland, California, EverStream Energy Capital Management LLC

5  ("EverStream"), through its counsel, will and hereby does move the Court for an order quashing,

6  or alternatively, modifying, the subpoena to produce documents (the "Document Subpoena") and

7  the subpoena to testify at deposition (the "Deposition Subpoena," and, collectively, the

8  "Subpoenas") served by NC Dengen Kaihatsu KK ("NCD"), and for other and further relief as

9  the Court deems just and proper, including that reciprocal discovery from NCD be ordered.

10      This Motion is made on the grounds that:

11      1.   This Court lacks personal jurisdiction over EverStream;

12      2.   The Deposition Subpoena must be quashed under Rule 45 of the Federal Rules of

13          Civil Procedure ("Rule 45"); and

14      3.   NCD's Subpoenas should further be quashed or modified under 28 U.S.C. § 1782

15          ("Section 1782").

16      This Motion will be based upon this Notice, the attached Memorandum of Points and

17  Authorities, the Declarations of Peter Hennessy and Chie Yakura, and upon all papers and

18  documents that may be presented at the time of the hearing.

19

20

21

22

23

24

25

26

27

28

1    Dated:  April 11, 2019                    MORRISON & FOERSTER LLP

2

3                                        By:  /s/ J. Alexander Lawrence
                                             J. ALEXANDER LAWRENCE
4                                            (CA SBN 208715)
                                             ALawrence@mofo.com
5                                            AUSTIN MICHAEL UHLER
                                             (CA SBN 319684)
6                                            AUhler@mofo.com
                                             JANELLE HYUN
7                                            (CA SBN 324907)
                                             JHyun@mofo.com
8                                            MORRISON & FOERSTER LLP
                                             Shin-Marunouchi Building, 29th Floor
9                                            5-1, Marunouchi 1-Chome
                                             Tokyo, Chiyoda-ku  100-6529, Japan
10                                           Telephone: +81 3 3214 6522
                                             Facsimile: +81 3 3214 6512
11
                                             Attorneys for Respondent
12                                           EVERSTREAM ENERGY
                                             CAPITAL MANAGEMENT LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   J. ALEXANDER LAWRENCE (CA SBN 208715)
    ALawrence@mofo.com
2   AUSTIN MICHAEL UHLER (CA SBN 319684)
    AUhler@mofo.com
3   JANELLE HYUN (CA SBN 324907)
    JHyun@mofo.com
4   MORRISON & FOERSTER LLP
    Shin-Marunouchi Building, 29th Floor
5   5-1, Marunouchi 1-Chome
    Tokyo, Chiyoda-ku  100-6529, Japan
6   Telephone: +81 3 3214 6522
    Facsimile: +81 3 3214 6512
7
    Attorneys for Respondent
8   EVERSTREAM ENERGY
    CAPITAL MANAGEMENT LLC
9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12                    **OAKLAND DIVISION**

13

14                                            Case No. 18-mc-80208-DMR
    IN RE EX PARTE APPLICATION OF NC
15  DENGEN KAIHATSU KK                        **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN SUPPORT OF**
16                                            **EVERSTREAM ENERGY CAPITAL**
                                              **MANAGEMENT LLC'S MOTION TO**
17                                            **QUASH OR MODIFY NC DENGEN**
                                              **KAIHATSU KK'S SUBPOENAS**
18
                                              Hearing Date:  June 13, 2019
19                                            Hearing Time:  11:00 a.m.
                                              Place:  Courtroom to be assigned
20                                            Before:  Hon. Donna M. Ryu

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    BACKGROUND ................................................................. 3

       A.     EverStream and Its Investments in Japan.................................. 3

       B.     Tohoku ......................................................................... 4

       C.     EverStream's Personnel and Offices...................................... 5

       D.     NCD ............................................................................ 5

       E.     The Underlying Dispute Between Tohoku and NCD in Japan ............... 6

       F.     NCD's Section 1782 Application ........................................ 7

III.   ARGUMENT ................................................................. 7

       A.     EverStream Is Not Subject to Personal Jurisdiction in California. ......... 7

       B.     The Deposition Subpoena Must Be Quashed Because the Only Employees with Knowledge of the Issues Reside Thousands of Miles from this District. ............... 9

       C.     Because the Application Was Granted *Ex Parte*, the Court Should Reconsider Section 1782's Statutory Requirements and *Intel* Factors and Quash the Subpoena. ...................................................... 11

              1.     NCD Improperly Seeks Discovery from Individuals and Entities Not Residing or Found in This District................................ 12

              2.     The *Intel* Factors Weigh Against Discovery............................. 14

                     a.     Factor 1:  The Discovery NCD Seeks Is Within the Tokyo District Court's Jurisdictional Reach. ........................................ 14

                     b.     Factor 2:  The Tokyo District Court Would Not Be Receptive to Irrelevant Evidence. ................................................ 17

                     c.     Factor 3:  NCD Seeks to Circumvent a Forum-Selection Clause. . 17

                     d.     Factor 4:  The Subpoenas Are Unduly Burdensome Because All the Key Information Is Present in Japan, and Their Scope Still Exceeds This Court's Instructions. ............................................ 18

       D.     If the Court Orders Discovery, It Should Exercise Its Discretion to Make Discovery Reciprocal. ................................................... 20

IV.    CONCLUSION ................................................................. 22

EverStream's Memorandum of Points and Authorities in Support of its Motion to Quash NC
Dengen Kaihatsu KK's Subpoenas
Case No. 18-mc-80208-DMR
tk-728116

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Ambercroft Trading Ltd.*,
No. 18-mc-80074-KAW, 2018 WL 4773187 (N.D. Cal. Oct. 3, 2018) .................................12

*In re ANC Rental Corp.*,
No. 02-148, 2002 U.S. Dist. LEXIS 12260 (E.D. Pa. June 20, 2002) ....................................10

*In re Application of Consorcio Minero, S.A. v. Renco Grp., Inc.*,
No. 11 Mc. 354, 2012 WL 1059916 (S.D.N.Y. Mar. 29, 2012) .............................................21

*In re Ex Parte Application of Qualcomm Inc.*,
162 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................................16

*In re Application of Sarrio, S.A.*,
119 F.3d 143 (2d Cir. 1997)..................................................................................................16

*In re Ex Parte Application of TPK Touch Solutions (Xiamen) Inc.*,
No. 16-mc-80193-DMR, 2016 WL 6804600 (N.D. Cal. Nov. 17, 2016)................................13

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
571 U.S. 49 (2013) ...............................................................................................................17

*Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd.*,
No. 17-mc-00216 (VEC), 2017 U.S. Dist. LEXIS 142404 (S.D.N.Y. Sept. 1,
2017) .....................................................................................................................................8

*In re Barnwell Enters. Ltd.*,
265 F. Supp. 3d 1 (D.D.C. 2017) ..........................................................................................16

*In re Bayer HealthCare LLC*,
No. 14-mc-80138-WHA, 2014 U.S. Dist. LEXIS 186818 (N.D. Cal. July 1,
2014) ...............................................................................................................................21, 22

*Cates v. LTV Aerospace Corp.*,
480 F.2d 620 (5th Cir. 1973)................................................................................................10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944-SC, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013)................................11, 15, 16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...................................................................................................... *passim*

*Esses v. Hanania (In re Esses)*,
101 F.3d 873 (2d Cir. 1996).................................................................................................20

EVERSTREAM'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH NC
DENGEN KAIHATSU KK'S SUBPOENAS
Case No. 18-mc-80208-DMR
tk-728116

ii

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995).................................................................................................20

*In re Fornaciari*,
    No. 17-mc-521, 2018 U.S. Dist. LEXIS 20182 (S.D.N.Y. Jan. 29, 2018) ................................8

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
    308 F.3d 1075 (9th Cir. 2002)...............................................................................................16

*In re Godfrey*,
    526 F. Supp. 2d 417 (S.D.N.Y. 2007).....................................................................................16

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
    633 F.3d 591 (7th Cir. 2011)............................................................................................14, 18

*Hermitage Global Partners L.P. v. Prevezon Holdings Ltd.*,
    No. 14-mc-00318 (TPG), 2015 U.S. Dist. LEXIS 20080 (S.D.N.Y. Feb. 19,
    2015) ......................................................................................................................................10

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010).................................................................................................................8, 9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) .........................................................................................................*passim*

*IPCom GmbH & Co. KG v. Apple Inc.*,
    61 F. Supp. 3d 919 (N.D. Cal. 2014) ....................................................................................12

*In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*,
    No. 2:14-cv-00797-GMN-NJK, 2015 U.S. Dist. LEXIS 72544 (D. Nev. May
    28, 2015) ................................................................................................................................15

*Estate of Klieman v. Palestinian Auth.*,
    293 F.R.D. 235 (D.D.C. 2013)...............................................................................................10

*In re Kreke Immobilien KG*,
    No. 13 Misc. 110 (NRB), 2013 U.S. Dist. LEXIS 160283 (S.D.N.Y. Nov. 8,
    2013) ......................................................................................................................................17

*Mardikian v. Golden Eagle Ins. Corp.*,
    No. C 13-02981 WHA, 2013 WL 4532454 (N.D. Cal. Aug. 23, 2013) ...................................9

*In re Mare Shipping Inc.*,
    No. 13 Misc. 238, 2013 U.S. Dist. LEXIS 152337 (S.D.N.Y. Oct. 23, 2013),
    *aff'd sub nom.*, *Marc Shipping Inc. v. Squire Sanders (US) LLP*, 574 Fed.
    Appx. 6 (2d Cir. 2014).............................................................................................................17

*Minatec Fin. S.a.r.l. v. SI Grp. Inc.*,
    No. 1:08-CV-269, 2008 U.S. Dist. LEXIS 63802 (N.D.N.Y. Aug. 18, 2008) ..................20, 21

EverStream's Memorandum of Points and Authorities in Support of its Motion to Quash NC
Dengen Kaihatsu KK's Subpoenas
Case No. 18-mc-80208-DMR
tk-728116

iii

*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007) ........................................................................18

*Nikon Corp. v. ASML U.S., Inc.*,
No. MC-17-00035-PHX-JJT, 2017 U.S. Dist. LEXIS 147354 (D. Ariz. Sept.
12, 2017), *aff'd sub nom.*, *Nikon Corp. v. ASML U.S., Inc. (In re Pursuant to §
1782 to Take Discovery of ASML U.S., Inc.)*, 707 Fed. Appx. 476 (9th Cir.
2017) .....................................................................................................................19

*In re Nokia Corp.*,
No. 1:07-MC-47, 2007 U.S. Dist. LEXIS 42883 (W.D. Mich. June 13, 2007) ......................13

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
15-cv-0595-BAS-MDD, 2016 U.S. Dist. LEXIS 46698 (S.D. Cal. Apr. 6,
2016) ......................................................................................................................7

*Price Waterhouse LLP v. First Am. Corp.*,
182 F.R.D. 56 (S.D.N.Y. 1998) ..........................................................................10

*RP Family, Inc. v. Commonwealth Land Title Ins. Co.*,
10-cv-1149 (DLI)(CLP), 2011 U.S. Dist. LEXIS 137334 (E.D.N.Y. Nov. 30,
2011) .....................................................................................................................10

*In re Ruiz*,
342 F. Supp. 448 (S.D.N.Y. 2018) ........................................................................8

*Salcido-Romo v. S. Copper Corp.*,
No. 16-01639-PHX-DXR, 2016 U.S. Dist. LEXIS 76584 (D. Ariz. June 10,
2016) .................................................................................................................15, 19

*In re Samsung Elecs. Co.*,
No. 12-80275 LHK (PSG), 2013 U.S. Dist. LEXIS 10518 (N.D. Cal. Jan. 23,
2013) .....................................................................................................................18

*In re Sargeant*,
278 F. Supp. 3d 814 (S.D.N.Y. 2017) ..................................................................12

*Starr Indem. & Liab. Co. v. Rolls-Royce Corp.*,
725 Fed. Appx. 592 (9th Cir. 2018) ......................................................................8

*Super Vitaminas, S.A.*,
No. 17-mc-80125-SVK, 2017 WL 5571037 (N.D. Cal. Nov. 20, 2017) ..........................12, 13

*In re Varian Med. Sys. Int'l AG*,
No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911 (N.D. Cal. Mar. 24,
2016) .....................................................................................................................14

EVERSTREAM'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH NC
DENGEN KAIHATSU KK'S SUBPOENAS
Case No. 18-mc-80208-DMR
tk-728116

iv

*Wylie v. Red Bull N. Am., Inc.*,
No. 1:14-cv-01086-WSD, 2015 WL 1137687 (N.D. Ga. Mar. 13, 2015), *aff'd*,
627 Fed. Appx. 755 (11th Cir. 2015) ...........................................................................9

**Statutes**

28 U.S.C. § 1782 .......................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ................................................................................ *passim*

Fed. R. Civ. P. 45(d)(3)(A)(ii) .............................................................................9

Fed. R. Civ. P. 45(c)(1)(A) ..................................................................................9

Marc Gottridge, *Is Section 1782 Discovery Available from Corporations Not "at Home" under "Daimler"?*, New York Law Journal (Feb. 9, 2018) ........................12

Hans Smit, American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 18 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Comm. 1, 10 (1998) .........................................................................12, 16

EVERSTREAM'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH NC
DENGEN KAIHATSU KK'S SUBPOENAS
Case No. 18-mc-80208-DMR
tk-728116

v

Pursuant to Rule 45 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1782 ("Section 1782"), nonparty EverStream Energy Capital Management LLC ("EverStream") objects to the subpoena to produce documents (the "Document Subpoena") and the subpoena to testify at deposition (the "Deposition Subpoena," and, collectively, the "Subpoenas") issued by NC Dengen Kaihatsu KK ("NCD"). EverStream hereby respectfully requests that the Subpoenas be quashed or alternatively modified.[1]

## I.    INTRODUCTION

As an initial matter, the Subpoenas must be quashed because this Court lacks personal jurisdiction over EverStream. EverStream's state of incorporation and principal place of business are elsewhere. Requiring EverStream to defend this action in a forum that has no relationship to any of the alleged conduct would violate constitutional due process as articulated by the Supreme Court in *Daimler AG v. Bauman*.

Additionally, the Deposition Subpoena must be quashed pursuant to Rule 45(d)(3)(A)(ii) of the Federal Rules of Civil Procedure. While EverStream maintains an office in this District in which two full-time employees work, neither of those employees could testify about the topics in the Deposition Subpoena. Two different EverStream employees were principally responsible for the investments in Japan. One of those employees lives and works in Japan, and the other lives and works in Maryland, more than two thousand miles away from this District.

With respect to the *ex parte* grant of NCD's Section 1782 application, the Subpoenas should also be quashed. When the Court assessed the statutory Section 1782 factors and the discretionary *Intel* factors, it did not have the opportunity to hear from EverStream. Courts routinely reassess the *ex parte* grants of Section 1782 applications after having had an opportunity to hear from the target of discovery. This is particularly appropriate here for many reasons.

First, while the Ninth Circuit has not yet decided this issue, the proper statutory

---

[1] Concurrently with this filing, in accordance with Rule 45 of the Federal Rules of Civil Procedure, EverStream has served written responses and objections to the Document Subpoena. EverStream objects to the scope of the Subpoenas and to producing documents or information in the absence of an appropriate confidentiality and protective order that limits use of such documents or information to the underlying litigation in Japan.

1    construction is that the requirement that an entity reside or be found in the district where the

2    application is made is coextensive with the constitutional test for general jurisdiction set forth in

3    *Daimler*.  Under that test, EverStream is not found in this District.

4          Second, as the Court recognized in its March 6, 2019 Order (ECF No. 8 at 6), there is only

5    one services agreement at issue in the Japanese litigation—specifically, the one between Tohoku

6    Eco Power Station GK ("Tohoku") and NCD.  NCD, however, neglected to inform the Court that

7    the Services Agreement at issue includes a broad forum-selection clause requiring resolution in

8    the Tokyo District Court of not only disputes between Tohoku and NCD, but *all legal*

9    *proceedings* relating to the Services Agreement.  Had it been informed of this fact, the Court

10   would have certainly considered this factor in its analysis.

11         Third, as the Court further recognized, the dispute in Japan is a narrow one.  The

12   Application, however, overstates EverStream's role in this narrow dispute.  In its Application,

13   NCD conflates EverStream with Tohoku, the Japanese solar power company, in whose solar

14   project EverStream is a minority investor.  NCD further stated that EverStream is a party to

15   certain contracts with NCD.  It is not.  The entities whose documents are relevant to NCD's

16   claims and defenses are Japanese GK entities located within the Tokyo District Court's

17   jurisdictional reach.  And, recognizing that what NCD really wants is discovery from individuals

18   and entities outside of this District, it drafted its Subpoenas to try to get to these documents and

19   information.  In the Subpoenas, NCD defines "You" and "Your" to include a long list of

20   individuals and legal entities other than EverStream, the vast majority of which are Japanese GK

21   entities within the jurisdictional reach of the Tokyo District Court.  This further contravenes

22   Section 1782's strict jurisdictional requirements that discovery only be sought from a person

23   found or residing in this District.

24         Fourth, even without the expansive definitions of "You" and "Your" and focusing solely

25   on EverStream documents or information, the Subpoenas seek documents and information that

26   have no relevance to the narrow dispute in the litigation pending in Japan.  Tohoku maintains

27   corporate separation from EverStream, and it was ultimately Tohoku's decision to terminate the

28   Services Agreement, not EverStream's.  What is relevant is thus maintained separately from

EverStream, and it can be had more easily and directly from Tohoku through Japanese procedures that the parties agree are available in Japan.  On top of that, NCD seeks documents spanning more than two years without justifying that timeframe, and seeks documents and information about EverStream's fellow investors, which have no arguable relevance whatsoever.

With the benefit of having heard from EverStream, the Court should reassess the statutory Section 1782 factors and discretionary *Intel* factors and quash the Subpoenas.  In the alternative, the Court should further modify the Subpoenas under the reasoning of its March 6, 2019 Order. The Court should further condition any discovery of EverStream on reciprocal discovery of NCD, as the Supreme Court has held is an appropriate measure in Section 1782 cases to ensure procedural fairness.

## II.    BACKGROUND

### A.    EverStream and Its Investments in Japan

EverStream is a small private equity firm that manages investments in renewable power generation projects.  (Hennessy Decl. ¶ 1.)  After the 2011 Great East Japan earthquake, tsunami, and Fukushima Daiichi nuclear power plant disaster, the government of Japan launched programs to attract and accelerate foreign investment into renewable power generation, including the current Feed-in-Tariff regime offered by the Ministry of Economy, Trade, and Industry of Japan ("METI").  (*Id.* ¶ 12.)  Through separate entities, EverStream made investments in Japan's solar power industry.  (*Id.* ¶ 13.)

One of the funds EverStream manages indirectly invests in a portfolio of ten solar power projects in Japan in various stages of operation, construction, and development.  (*Id.* ¶¶ 13, 15.) EverStream does not own the solar projects; instead, its primary international fund, the EverStream Solar Infrastructure Fund I LP, is a limited partner and minority investor in two Japan-specific funds called ES NPV Holdings, LP, and ES NPV Holdings II, LP (each a "Japan Fund" or simply a "Fund").[2]  (*Id.* ¶ 15.)  A separate holding company, in which EverStream has a

---

[2] The majority interest in each of the Japan Funds is indirectly owned by single large-asset management firms under terms and conditions set forth in two Limited Partnership Agreements. *Id.* ¶ 15.

EVERSTREAM'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH NC DENGEN KAIHATSU KK'S SUBPOENAS
Case No. 18-mc-80208-DMR
tk-728116

3

1    controlling interest, acts as the general partner of these Funds.  (*Id.*)  EverStream and its Japan

2    Funds are not the same.

3        Moreover, the Japan Funds do not directly invest in the solar power projects themselves.

4    (*Id.* ¶ 16.)  The Funds invest in the solar power projects indirectly through Cayman Island

5    investor entities, which in turn are party to passive investing agreements customary for

6    investment in Japan that are known under Japanese law as *tokumei kumiai*.  (*Id.*; Yakura Decl.

7    ¶¶ 4-5.)  Under *tokumei kumiai* agreements, each Cayman entity invests in solar power project

8    functionally owned and operated by a Japanese *godo kaisha*, a limited liability company.

9    (Hennessy Decl. ¶ 16; Yakura Decl. ¶ 6.)  These final companies at the end of the solar industry

10   investment chain are colloquially referred to as project companies.  (Hennessy Decl. ¶ 16.)

11   Tohoku is one of those project companies.

12       Contrary to NCD's account (ECF No. 7 at 3 (Amended Application ("Am. Appl.") at 2);

13   Hiyama Declaration ¶ 4; ECF No. 8 at 2 (Order Granting Amended *Ex Parte* Application in Part

14   and Denying in Part at 2)), NCD and EverStream are *not* parties to any project sourcing

15   agreement.  (Hennessy Decl. ¶ 15.)  In fact, *there are no contracts* between EverStream and

16   NCD.  (*Id.* ¶ 21.)  Instead, each Japan Fund is or was party to one of two Project Sourcing

17   Agreements with NCD, and each project company was party to a Services Agreement with NCD.

18   (*Id.* ¶¶ 15, 21.)

19       **B.    Tohoku**

20       Under Japanese law, Tohoku is required to maintain separation from its investors.

21   (Yakura Decl. ¶ 7.)  NCD knows this; NCD advised on the proper way to establish the Japanese

22   entities.  (Hennessy Decl. Ex. 3 ("[*Tokumei kumiai*] investors have to be silent, and cannot

23   participate directly or indirectly in decision making or management of the [project companies']

24   Business.  Separation between the [*tokumei kumiai*] Investor and [the project company]

25   (including relationships via common control) need to be considered.").)

26       Tohoku—not EverStream, nor the Funds—owns and manages the assets necessary to

27   build the solar power facility at issue in the Japanese litigation, such as the METI certificate to

28   earn a guaranteed Feed-in-Tariff rate, the rights to connect to the utility grid, and the project land.

EverStream's Memorandum of Points and Authorities in Support of its Motion to Quash NC
Dengen Kaihatsu KK's Subpoenas
Case No. 18-mc-80208-DMR
tk-728116

4

1  (Yakura Decl. ¶ 6.)  Tohoku has no full-time employees, but it operates from a separate office,

2  with separate management, and follows the formalities necessary under Japanese law to preserve

3  its corporate separateness from its *tokumei kumiai* investor, the Japan Funds, and EverStream.

4  (*Id.* ¶ 8-9.)  Tohoku's Representative Member is SH Tohoku Eco Power Station Holding, and its

5  operations are administered by its executive officer, who is not employed by EverStream and

6  lives in Japan.  (*Id.* ¶ 9.)

7  **C.    EverStream's Personnel and Offices**

8  EverStream has only ten employees.  (Hennessy Decl. ¶ 3.)  It maintains five offices, in

9  Wayzata, Minnesota; Bethesda, Maryland; Tokyo, Japan; Madrid, Spain; and San Francisco,

10  California.  (*Id.* ¶ 4-5.)  The San Francisco office is focused on accounting functions, whereas the

11  principals of EverStream, Peter Lee and Carlos Domenech, exercise their primary authority to

12  direct and oversee the company's operations from Minnesota and Maryland, respectively.  (*Id.*

13  ¶¶ 4, 7.)  EverStream's founding office was located in Minnesota, at a time when Mr. Lee and an

14  individual who has since left the company were the only active partners.  (*Id.* ¶ 9.)

15  The San Francisco office has only two full-time employees and two consultants.  (*Id.* ¶ 7.)

16  It has no partners.  (*Id.* ¶ 10.)  The full-timers are Tracy Hutt, who serves as CFO, and Paul

17  Huelskamp, who is part of the U.S. markets origination and execution team, but spends the

18  majority of his time overseas managing EverStream's investments in India.  (*Id.* ¶ 7.)  Neither

19  Ms. Hutt nor Mr. Huelskamp has any detailed knowledge of the subject matter of the underlying

20  litigation in Japan.  (*Id.* ¶ 8.)  EverStream neither owns nor leases its office space in San

21  Francisco, but instead rents space on a month-to-month contract with WeWork.  (*Id.* ¶ 10.)

22  Neither of the two individuals managing EverStream's investments in Japan lives or

23  works in this District:  Mr. Domenech lives and works in Maryland; and Peter Hennessy,

24  Managing Director of EverStream, lives and works in Japan.  (*Id.* ¶ 2.)

25  **D.    NCD**

26  NCD is a Japanese power project developer that has provided project sourcing to investors

27  and development services to solar power projects in Japan.  (*Id.* ¶ 19.)  When first introducing

28  itself on February 20, 2014, NCD held itself out as a trustworthy partner to help foreign investors

EVERSTREAM'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH NC
DENGEN KAIHATSU KK'S SUBPOENAS
Case No. 18-mc-80208-DMR
tk-728116

5

1  navigate the Japanese solar market:  it explained that "Japanese developers [had been] most

2  successful [up until that time] (not foreigners)."  (*Id.* Ex. 3.)  At that time, Akinori Oyama and

3  Atsushi Hoshino were presented as Co-CEOs of NCD, equal partners, who owned equal portions

4  of NCD, indicating that both individuals would be fully committed to the projects.  (*Id.* ¶ 20.)

5         **E.    The Underlying Dispute Between Tohoku and NCD in Japan**

6         In the fall of 2017, it came to light that the professional relationship that had been

7  represented as the nucleus of NCD was falling apart.  (*Id.* ¶ 22.)  Mr. Oyama and Mr. Hoshino

8  had a falling out, and Mr. Oyama sought to remove Mr. Hoshino from his position as a director

9  and officer of NCD.  (*Id.*)  When it was revealed that Mr. Oyama was providing nothing to Mr.

10  Hoshino to compensate him for his approximate 50% ownership of NCD, it became apparent that,

11  contrary to the representations made, Mr. Hoshino and Mr. Oyama were not equal partners.  (*Id.*)

12  On or around November 6, 2017, Mr. Hoshino was forced to resign as director of NCD and

13  ceased to be involved in NCD's business.  (*Id.* ¶ 23.)  The core team at NCD that investors had

14  relied on was no more.

15         On March 6, 2018, Tohoku terminated its Services Agreement with NCD, citing various

16  termination grounds, including NCD's misrepresentations of its ownership structure and other

17  material misrepresentations.  (Yakura Decl. ¶ 10.)  Despite repeated requests, NCD refused to

18  transfer rights to land in the project site that it controlled in its own name, and generally refused

19  to cooperate in a smooth transition to NCD's replacement contractor.  (*Id.* ¶ 12.)  NCD further

20  refused to acknowledge Tohoku's right to terminate.  (*Id.*)

21         On June 5, 2018, Tohoku initiated litigation in the Tokyo District Court against NCD and

22  related persons for various breaches of the single Tohoku Services Agreement.  (*Id.* ¶ 13.)

23  Tohoku argued that it had validly terminated that agreement in connection with NCD's

24  misrepresentations of its ownership structure, and asked the court to compel NCD to transfer

25  project land to Tohoku and find NCD liable for the damages resulting from delays.  (*Id.*)  In its

26  first substantive defense brief, NCD argued that Tohoku's termination was invalid, that its

27  proffered termination grounds were a pretext, and that the true reason for termination was that

28  NCD refused to agree to a so-called improper payback scheme, what NCD refers to as "Tohoku's

1    true basis for terminating the Services Agreement." (*Id.* ¶ 14; ECF No. 7 at 4 (Am. Appl. at 3).)

2    The events that comprise Tohoku's basis for termination (misrepresentations about NCD's

3    ownership structure) occurred in Japan. (Hennessy Decl. ¶ 20.) NCD has not alleged that the

4    events that comprise its alternative theory (the proposed payback arrangement) occurred

5    anywhere else.

6           **F.**      **NCD's Section 1782 Application**

7          On March 12, 2019, EverStream's registered agent was served with the Subpoenas. Prior

8    to that date, EverStream was unaware of the Application. (Hennessy Decl. ¶ 25.)

9    **III.    ARGUMENT**

10          At the outset, the Subpoenas must be quashed because this Court lacks personal

11    jurisdiction over EverStream. This proceeding has nothing to do with its activities in the District,

12    its state of incorporation is Delaware, and its San Francisco office cannot fairly be called its

13    principal place of business. Additionally, the Court should quash or modify NCD's Subpoenas

14    for two reasons. First, Rule 45 of the Federal Rules of Civil Procedure protects EverStream from

15    forcing its employees to travel thousands of miles, or requiring it to educate one of its two full-

16    time California employees, who know little to nothing about the Japanese solar project. Second,

17    in light of facts that NCD neglected to include in its Application, the Court should reconsider

18    Section 1782's statutory factors and its discretionary *Intel* factors and either quash or modify the

19    Subpoenas. Alternatively, if the Court does not quash the Subpoenas entirely, it should require

20    NCD to provide reciprocal discovery in the interest of fairness, as the Supreme Court has

21    specifically held is permitted under Section 1782.

22           **A.**      **EverStream Is Not Subject to Personal Jurisdiction in California.**

23          This Court lacks jurisdiction to order discovery from EverStream, because it lacks a basis

24    for either specific or general personal jurisdiction.[3] NCD has not alleged that anything

25    _____

26    [3] The personal jurisdiction requirement applies equally to nonparty subpoenas issued under Rule 45. *See, e.g., Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 15-cv-0595-BAS-MDD, 2016 U.S. Dist. LEXIS 46698, at *3 (S.D. Cal. Apr. 6, 2016) ("A district court must have

27    personal jurisdiction over a non-party to compel him to comply with a discovery request under Rule 45."). And, while the proper statutory construction is that the requirements are coextensive,

28    constitutional due process requirements must be met regardless of the meaning of "the district in

1    EverStream did in California gave rise to its application, so there can be no specific jurisdiction.

2    EverStream's affiliations with California are not so continuous and systematic as to render it

3    "essentially at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). In the context of

4    a corporation, such places are limited to the state of incorporation, the principal place of business,

5    *id.* at 137, and potentially other locations in exceptional cases, such as where a company's

6    operations are interrupted and all its activities are directed by its president from a temporary

7    office. *Id.* at 130 n.8. EverStream is incorporated in Delaware, and NCD alleges no exceptional

8    circumstances.

9         Thus, this Court could only have jurisdiction over EverStream if San Francisco were its

10   principal place of business. And it is not. EverStream's principal place of business is the place

11   where its partners exercise their authority to "direct, control, and coordinate [its] activities."

12   *Cf. Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (establishing "nerve center" rule for

13   determining the principal place of business of corporations in diversity of citizenship analysis).

14   Although EverStream "divide[s its] command and coordinating functions among [partners] who

15   work at . . . different locations," *see id.* at 95-96; (Hennessy Decl. ¶¶ 4, 9), its principal place of

16   business is "the center of overall direction, control, and coordination." *See Hertz*, 559 U.S. at 96.

17   Given the ownership and management structure of EverStream, that place is its office in Wayzata

18   Minnesota, not San Francisco, where there are no partners and no authority to direct

19   EverStream's global activities. (*See* Hennessy Decl. ¶¶ 9-10.) This is true despite the fact that

20   EverStream carries out accounting-focused functions in San Francisco. (*See id.* ¶ 7); *Starr Indem.*

21   *& Liab. Co. v. Rolls-Royce Corp.*, 725 Fed. Appx. 592, 593-94 (9th Cir. 2018) (unpublished

22   mem. disp.) (district court committed reversible error in finding Arizona office was "nerve

23

24   which a person resides or is found…." under Section 1782. *See Austl. & N.Z. Banking Grp. Ltd.*
     *v. APR Energy Holding Ltd.*, No. 17-mc-00216 (VEC), 2017 U.S. Dist. LEXIS 142404, at *5, *8

25   (S.D.N.Y. Sept. 1, 2017) ("Regardless of what section 1782 requires, the Constitution's due
     process protections apply….The Court need not reach the issue of whether section 1782 provides

26   a basis to exercise personal jurisdiction—essentially the issue disputed by the parties as described
     above—because the constitutional requirements are not satisfied here."); *In re Ruiz*, 342 F. Supp.

27   448, 452-53 (S.D.N.Y. 2018) (same); *In re Fornaciari*, No. 17-mc-521, 2018 U.S. Dist. LEXIS
     20182, at *4 (S.D.N.Y. Jan. 29, 2018) (same).

28

1    center" because it conducted "regulatory work essential to [the corporation's] business[,]" when

2    Texas office was the "center of *overall* direction, control, and coordination . . . ." (citation

3    omitted)).

4         It is also insufficient for NCD to point to EverStream's California Secretary of State filing

5    designating a principal office in San Francisco.  *See Hertz*, 559 U.S. at 97 (rejecting suggestion

6    that Securities and Exchange Commission form 10-K listing a corporation's "principal executive

7    offices" would suffice to establish a "nerve center"); *Wylie v. Red Bull N. Am., Inc.*, No. 1:14-cv-

8    01086-WSD, 2015 WL 1137687, at *3 (N.D. Ga. Mar. 13, 2015), *aff'd*, 627 Fed. Appx. 755 (11th

9    Cir. 2015) ("[A] majority of federal courts have found that information filed with the Secretary of

10    State that shows a corporation's 'Principal Office Address' is insufficient proof of the

11    corporation's principal place of business."); *see also Mardikian v. Golden Eagle Ins. Corp.*,

12    No. C 13-02981 WHA, 2013 WL 4532454, at *2-3 (N.D. Cal. Aug. 23, 2013) (finding nerve

13    center in California despite registration of Boston as "principal office address" on incorporation

14    filings).  EverStream's 2012 California Secretary of State filing referring to a San Francisco

15    "headquarters" is also insufficient, because EverStream no longer has that office, and back in

16    2012 EverStream had a different management structure with a partner operating from San

17    Francisco.  (*See* Hennessy Decl. ¶ 10.)[4]  Of course, EverStream does not deny that another court

18    in another district may have personal jurisdiction over EverStream, but this Court does not.

19         **B.**    **The Deposition Subpoena Must Be Quashed Because the Only Employees**
           **with Knowledge of the Issues Reside Thousands of Miles from This District.**

20

21         Pursuant to Rule 45(d)(3)(A)(ii), a court, upon timely motion, is required to quash or

22    modify a subpoena that "requires a person to comply beyond the geographical limits specified in

23    Rule 45(c)."  Fed. R. Civ. P. 45(d)(3)(A)(ii).  In turn, pursuant to Rule 45(c)(1)(A), a subpoena

24    may only command a person to attend a deposition "within 100 miles of where the person resides,

25    is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).  These rules

26

27    ───────────────
[4] EverStream does maintain the 101A Clay Street #134, San Francisco, CA 94111 address, but
when listing that address on the October 30, 2018 California Secretary of State Statement of
28    Information, EverStream in no way meant to imply that it was the company's headquarters.  (*Id.*)

1    apply equally to 30(b)(6) deposition notices served under Rule 45.  The focus is on the location of

2    the people with knowledge, not where a company has offices.

3         Courts have regularly quashed 30(b)(6) deposition subpoenas issued under Rule 45, where

4    notwithstanding the company's presence in the district, the knowledgeable employees are not.

5    The decision in *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235 (D.D.C. 2013) is

6    illustrative.  The district court held that "under Rule 45, this Court must quash a subpoena where

7    a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6)

8    representative within 100 miles of the district."  *Id.* at 239.  Likewise, in *Price Waterhouse LLP v.*

9    *First Am. Corp.*, 182 F.R.D. 56, 62-63 (S.D.N.Y. 1998), the district court held that "allowing a

10   subpoena served pursuant to Rule 30(b)(6) to evade the proscriptions of Rule 45(c) would render

11   Rule 45 surplusage and subject nonparties to the same level of burdensome discovery that can be

12   imposed upon a party. . . . In essence, any contention that a subpoena served pursuant to Rule

13   30(b)(6) need not comply with the requirements of Rule 45(c) would 'fly in the face of the intent

14   of Rule 45([c]) which is to "protect nonparty witnesses from being inconvenienced by being

15   compelled to travel inordinate distances to have their depositions taken."'"  (*quoting Stanford v.*

16   *Kuwait Airlines Corp.*, No. 85 Civ. 0477, 1987 U.S. Dist. LEXIS 10981 (S.D.N.Y. Nov. 25,

17   1987)).[5]

18        Neither of EverStream's two full-time employees in this District could testify to the topics

19   in the Deposition Subpoena, and neither could be reasonably educated about these matters.  (*See*

20

21   ───────────────
     [5] *See also Hermitage Global Partners L.P. v. Prevezon Holdings Ltd.*, No. 14-mc-00318 (TPG),
22   2015 U.S. Dist. LEXIS 20080, at *14 (S.D.N.Y. Feb. 19, 2015) ("the plain language of Rule
     45(c) indicates that the court cannot compel a witness—as an individual or as a corporate
23   representative—to travel more than 100 miles from a place of residence, employment, or regular
     business to testify at a deposition."); *In re ANC Rental Corp.*, No. 02-148, 2002 U.S. Dist. LEXIS
24   12260, at *3 (E.D. Pa. June 20, 2002) (quashing subpoena that commanded nonparty's corporate
     designee to "travel over 1,200 miles…."); *RP Family, Inc. v. Commonwealth Land Title Ins. Co.*,
25   10-cv-1149 (DLI)(CLP), 2011 U.S. Dist. LEXIS 137334, at *10, 15 (E.D.N.Y. Nov. 30, 2011)
     (recognizing that the court "lacks authority' to order nonparty Rule 30(b)(6) designee to appear
26   who resides outside the 100-mile limit and "there appears to be no comparable employee located
     in New York with the requisite knowledge necessary to answer the questions at issue[]"); *Cates v.*
27   *LTV Aerospace Corp.*, 480 F.2d 620, 623 (5th Cir. 1973) ("a person designated by an
     organization pursuant to Rule 30(b)(6) could not be required to travel outside of the limits
28   imposed by…." the former version of Rule 45(c)(3)(A)(ii)).

1    Hennessy Decl. ¶¶ 7-8.)  EverStream could only comply by forcing one of its two employees who

2    were principally responsible for the Japanese solar projects to travel thousands of miles to

3    California.  (*See id.* ¶ 2.)  Rule 45 does not require that.

4        **C.**    **Because the Application Was Granted *Ex Parte*, the Court Should Reconsider Section 1782's Statutory Requirements and *Intel* Factors and Quash the**

5                    **Subpoena.**

6        Section 1782 permits a district court to provide assistance to foreign litigants by giving

7    them access to certain discovery tools in the United States.

8        Section 1782 contains three statutory prerequisites before discovery may be granted:

9    (1) the person from whom discovery is sought must reside or be found in the district of the district

10   court where the application is made; (2) the discovery must be "for use" in a proceeding before a

11   foreign tribunal; and (3) the application must be made by the foreign tribunal or "any interested

12   person."  28 U.S.C. § 1782.

13       In addition, while not required to consider each of the factors, district courts typically

14   consider the four discretionary factors articulated by the Supreme Court in *Intel*:

15       (1)    whether the material sought is within the foreign tribunal's jurisdictional reach and

16               thus accessible absent Section 1782 aid;

17       (2)    the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency

18               abroad to U.S. federal-court jurisdictional assistance;

19       (3)    whether the Section 1782 request conceals an attempt to circumvent foreign proof-

20               gathering restrictions or other policies of a foreign country or the United States; and

21

22       (4)    whether the subpoena contains unduly intrusive or burdensome requests.

23   *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244 (2004). These factors are not

24   exclusive, and other factors, such as whether NCD is forum-shopping, can be considered. *In re*

25   *Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944, at *4 (N.D. Cal.

26   Jan. 17, 2013).

27       While courts in this District routinely grant Section 1782 applications *ex parte*—and

28   EverStream does not suggest any error in doing so—those courts also routinely reassess *ex parte*

EVERSTREAM'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH NC DENGEN KAIHATSU KK'S SUBPOENAS
Case No. 18-mc-80208-DMR
tk-728116

11

1  grants of Section 1782 applications after having had an opportunity to hear from the target of

2  discovery.[6]  This is appropriate here.

3         1.     **NCD Improperly Seeks Discovery from Individuals and Entities Not Residing or Found in This District.**

4

5         Because NCD seeks documents and information solely from individuals and entities not

6  found in this District, the first statutory requirement of Section 1782 is not met, and the

7  Subpoenas should be quashed.  As NCD itself recognizes, "[t]he person from whom discovery is

8  sought must reside or be found in this district[.]"  (ECF No. 7 at 4 (Am. Appl. at 3).)  This is a

9  bedrock statutory factor.  If not met, the Section 1782 application must be denied.

10        EverStream does not reside and is not found in this District.  To be sure, it maintains an

11 office with certain accounting functions here, but that is not enough.  To "reside" or be "found" in

12 a district for purposes of Section 1782, a corporate entity must be subject to the court's general

13 jurisdiction under *Daimler*.  *In re Sargeant*, 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017).[7]

14 According to the drafter of Section 1782, Professor Hans Smit, a person is "resident" if "the

15 relationship of the person addressed to the district is such as to warrant the exercise of *in*

16 *personam* authority under the due process clause…."  Hans Smit, American Assistance to

17 Litigation in Foreign and International Tribunals: Section 1782 of Title 18 of the U.S.C.

18 Revisited, 25 Syracuse J. Int'l L. & Comm. 1, 10 (1998) ("Insofar as the term ['found'] applies to

19 legal rather than natural persons, it may safely be regarded as referring to judicial precedents that

20 equate systematic and continuous local activities with presence.").[8]

21

22 [6] *E.g., IPCom GmbH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919 (N.D. Cal. 2014); *In re Ambercroft Trading Ltd.*, No. 18-mc-80074-KAW, 2018 WL 4773187 (N.D. Cal. Oct. 3, 2018).

23 [7] *See also* Marc Gottridge, *Is Section 1782 Discovery Available from Corporations Not "at
24 Home" under "Daimler"?*, New York Law Journal (Feb. 9, 2018) ("Judge Pauley's statutory analysis in *Sargeant* should render irrelevant any inquiry into whether specific jurisdiction could
25 constitutionally support a particular §1782 subpoena addressed to a corporation. After all, if the proponent has failed to establish a statutory basis for jurisdiction, the court need not consider
26 whether exercising jurisdiction would comport with due process. . . . . This approach reflects judicial 'respect for the doctrine of constitutional avoidance.'" (quotations and citation omitted)).

27 [8] The Ninth Circuit has not yet addressed post-*Daimler* what it means to reside or be found in a
28 district, and prior decisions in this district have not explained why *Daimler* has not raised the bar for Section 1782's first statutory requirement.  *See Super Vitaminas, S.A.*, No. 17-mc-80125-

1    That is not the only problem with NCD's Subpoenas.  On their face, they are addressed to

2    EverStream alone, and were served on EverStream alone.  However, the Subpoenas define "You"

3    as encompassing EverStream's subsidiaries, affiliates, officers, directors, employees, agents, and

4    representatives, former and current, without limitation that those persons reside or be found

5    within this District.  In fact, several persons *not* residing or found in this District are named:

6    Peter Lee (Minnesota), Carlos Domenech (Maryland), Peter Hennessy (Japan), Francisco Perez

7    (Madrid), Eric Purington (Japan), Oliver Fisher (Idaho), and Pablo Cabeza (Japan).  (Hennessy

8    Decl. ¶¶ 4-6.)  What's more, "You" names eleven Japanese *godo kaisha* companies (a Japanese

9    limited liability company form, recognizable by the "GK" at the end of each of their names), each

10    of which maintains its offices and assets in Japan and conducts its operations in Japan, not in this

11    District.  (*Id.* ¶¶ 6, 16.)

12    By way of example, Request for Production No. 3 seeks "[c]ommunications concerning

13    NCD made to You by third parties," and Deposition Topic No. 1 seeks to have a witness testify

14    about "Your relationship with NCD, including Your projects with NCD . . . ."  Nowhere does

15    NCD limit its request to EverStream documents in its possession, custody, or control, or to

16    testimony about EverStream's own actions or conduct.

17    Identifying one corporate entity in a district for the purposes of Section 1782 discovery,

18    and then seeking to bootstrap foreign affiliates onto the application, has been rejected.  *See In re*

19    *Nokia Corp.*, No. 1:07-MC-47, 2007 U.S. Dist. LEXIS 42883, at *12-13 (W.D. Mich. June 13,

20    2007) ("The Court issued that Order based solely upon its review of Nokia's application, which

21    provided some basis for the conclusion that Bosch resides in this district.  However, the Court has

22    now considered Bosch's evidence showing that it has no connection with this district and that

23    Bosch Fuel Systems is the entity with a place of business in [the district].").

24    To obtain Section 1782 discovery from all of the other individuals and entities that NCD

25

26    SVK, 2017 WL 5571037, at *5 n.1 (N.D. Cal. Nov. 20, 2017) (acknowledging *Daimler* has
changed the standard in other districts but not addressing personal jurisdiction); *In re Ex Parte*
27    *Application of TPK Touch Solutions (Xiamen) Inc.*, No. 16-mc-80193-DMR, 2016 WL 6804600,
at *2 (N.D. Cal. Nov. 17, 2016) (no discussion of *Daimler*).
28

seeks to bootstrap onto its application, it would need to show that each of those entities and individuals are found in this District. They are not.

## 2. The *Intel* Factors Weigh Against Discovery.

Even if the Court were to find that all the statutory requirements of Section 1782 are met (and they are not), the Subpoenas should be quashed because multiple *Intel* factors weigh strongly against granting the Application.

### a. Factor 1: The Discovery NCD Seeks Is Within the Tokyo District Court's Jurisdictional Reach.

With respect to the first *Intel* factor, the documents and information that NCD seeks is undoubtedly within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid. As Judge Posner noted:

> [D]istrict courts must be alert for potential abuses that would warrant a denial of an application to be allowed to take [Section 1782] discovery. ***One abuse would be for a party to seek discovery in a federal district court that it could obtain in a foreign jurisdiction***, thus gratuitously forcing his opponent to proceed in two separate court systems; the inference would be that the party seeking U.S. discovery was trying to harass his opponent.

*Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (emphasis added). Likewise, courts in this District have held that "the first *Intel* factor 'militates against allowing § 1782 discovery when the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct entity.'" *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911, at *9 (N.D. Cal. Mar. 24, 2016) (citation omitted).

NCD claims that EverStream is outside the jurisdictional reach of the Tokyo District Court. Am. Appl. at 7 (ECF No. 7). But the Subpoenas seek information primarily within it. Tohoku—the entity that terminated the Services Agreement—is a party to the underlying action, so its documents and knowledge definitely are within the reach of the Tokyo District Court. *See Intel*, 542 U.S. at 264 ("A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."). Further, the core relevant employee of EverStream,

1   Peter Hennessy, who has personal knowledge of the circumstances of NCD's termination, resides

2   and works in Tokyo.  (Hennessy Decl. ¶¶ 2, 19-24.)  And, as NCD admits, the evidence NCD

3   seeks under Section 1782 from EverStream is "consistent with the type of discovery available in

4   the Tokyo Action[.]"  (ECF No. 7 at 7 (Am. Appl. at 6).)  Granting that similar discovery tools

5   are available in Japan, and adding to the factual context that the key events, persons, and

6   documents NCD seeks are *also* in Japan, NCD should not be permitted to burden EverStream

7   with discovery in the United States.

8          Although discovery of nonparties is not granted in Japanese litigation as of right,

9   procedures exist for parties to a civil action to petition the court to make a nonparty produce

10  documents for use in the proceeding.  (Yakura Decl. ¶ 16.)  In order to take advantage of this

11  procedure, a party must give the court the name or a sufficient description of the particular

12  documents sought, and persuade the court that its assistance is appropriate under the

13  circumstances.  (*Id.*)  Procedures also exist to petition the court to make a nonparty witness

14  provide testimony under penalty of court sanction.  (*Id.* ¶ 17.)  The great majority of the evidence

15  NCD seeks is therefore *within the jurisdictional reach* of the Tokyo District Court.  (*See id.* ¶ 21.)

16  The fact that discovery in Japan may not be as robust as in the United States does not advance

17  NCD's argument.  *See Salcido-Romo v. S. Copper Corp.*, No. 16-01639-PHX-DXR, 2016 U.S.

18  Dist. LEXIS 76584, at *9-10 (D. Ariz. June 10, 2016) ("That foreign proof-gathering procedures

19  are more burdensome does not, alone, justify this Court's intervention[]" and instead may suggest

20  that the petition is "motivated, at least in part, by a desire to circumvent less favorable or more

21  onerous proof-gathering restrictions[.]").

22         Insofar as the Subpoenas seek the production of documents from and a deposition

23  regarding the corporate knowledge of persons or entities located in Japan, it should be quashed.

24  *See Intel*, 542 U.S. at 261 ("comity and parity concerns may be important as touchstones for a

25  district court's exercise of discretion in particular cases . . . ."); *CRT*, 2013 WL 183944, at *3

26  ("resorting immediately to § 1782" when foreign courts may control and direct discovery of the

27  same requested materials suggests "an applicant has 'side-stepped' less-than-favorable discovery

28  rules" of that foreign court); *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie*

1   *Bank Ltd.*, No. 2:14-cv-00797-GMN-NJK, 2015 U.S. Dist. LEXIS 72544, at *30 (D. Nev. May

2   28, 2015) (denying petition where "[t]he necessary parties are litigating their dispute in the

3   Netherlands, and the material at issue is within the jurisdictional reach of the District Court in

4   Amsterdam").

5           Moreover, several courts have held that Section 1782 does not authorize a district court to

6   order production of documents or things located in foreign countries.  *See Four Pillars Enters.*

7   *Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) (upholding refusal to order

8   production of documents located in China); *In re Application of Sarrio, S.A.*, 119 F.3d 143, 147

9   (2d Cir. 1997) (construing § 1782(a) to reach evidence abroad could make U.S. courts "clearing

10  houses" for discovery in litigation around the world); *In re Ex Parte Application of Qualcomm*

11  *Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016) (collecting cases rejecting extraterritorial

12  application of Section 1782).  Cases that do not so hold recognize that "the body of available

13  caselaw suggests that Section 1782 is not properly used to seek documents held outside the

14  United States as a general matter."  *See In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 9 (D.D.C.

15  2017) (internal citation omitted and formatting altered).

16          Likewise, the drafter of Section 1782, Professor Smit, identified clear and "potent

17  reasons" why Section 1782 must not be used—as NCD is trying to here—"to compel documents

18  located in a foreign country for use in a foreign proceeding…."  *See In re Godfrey*, 526 F. Supp.

19  2d 417, 423 (S.D.N.Y. 2007) (citing Smit, 25 Syracuse J. Int'l L. & Comm. at 11).  First, "a

20  harmonious scheme is established: Evidence in Spain is obtained through proceedings in Spain,

21  evidence in Great Britain is obtained through proceedings in Great Britain, and evidence in the

22  United States is obtained through proceedings in the United States."  Smit, 25 Syracuse J. Int'l L.

23  & Comm. at 11.  Second, "Section 1782 should not be used to interfere with the regular court

24  processes in another country," for example by enabling litigants to obtain evidence "located in

25  Spain that could not be obtained through proceedings in Spain."  *Id*.  Third, American courts were

26  not meant to become "clearing houses for requests for information from courts and litigants all

27  over the world in search of evidence to be obtained all over the world."  *Id*.; *see also Godfrey*,

28  526 F. Supp. 2d at 423; *CRT*, 2013 WL 183944, at *2 ("despite [Respondent's] nonparty status, it

1    is obvious that [Applicant] actually seeks information about Defendants, some of whom are

2    subject to Korean discovery rules as parties to the Korean Litigation. . . . [Applicant] has

3    discovery options available to it in Korea, . . . the critical point being that [Applicant] has not

4    availed itself of them."); *In re Mare Shipping Inc.*, No. 13 Misc. 238, 2013 U.S. Dist. LEXIS

5    152337, at *14 (S.D.N.Y. Oct. 23, 2013), *aff'd sub nom.*, *Marc Shipping Inc. v. Squire Sanders*

6    *(US) LLP*, 574 Fed. Appx. 6 (2d Cir. 2014) ("Considering that, for all intents and purposes, the

7    real subject of the subpoena is Applicants' opponent in the foreign proceeding and the failure of

8    Applicants to seek the requested material through [foreign] proof mechanisms, the Court denies

9    Applicants' motion.") (internal citation omitted and formatting altered).

10              **b.**     **Factor 2:  The Tokyo District Court Would Not Be Receptive to**
                           **Irrelevant Evidence.**
11

12              As to the second *Intel* factor, which looks to the nature of the foreign tribunal, the

13    character of the proceedings underway abroad, and the receptivity of the foreign government or

14    the court or agency abroad to U.S. federal court jurisdictional assistance, EverStream does not

15    dispute that the Tokyo District Court presides over a civil matter and will receive relevant

16    evidence in that proceeding.  However, as discussed herein, the evidence NCD seeks from

17    EverStream is largely irrelevant to its claims or defenses.  The Tokyo District Court certainly has

18    no interest in evidence that has no relevance.  At best, this factor is neutral.  *See In re Kreke*

19    *Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 U.S. Dist. LEXIS 160283, at *15-16 (S.D.N.Y.

20    Nov. 8, 2013) ("when the district court has no evidence suggesting opposition from the foreign

21    tribunal, the second *Intel* prong should count as neutral or slightly favoring the petitioner.").

22              **c.**     **Factor 3:  NCD Seeks to Circumvent a Forum-Selection Clause.**

23              With respect to the third *Intel* factor, whether the Section 1782 request conceals an

24    attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or

25    the United States, NCD's application does conceal such an attempt.  Specifically, NCD's Section

26    1782 Application conceals an attempt to circumvent the policies of Japan and the United States in

27    enforcing forum-selection clauses.  *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Of*

28    *Tex.*, 571 U.S. 49, 63 (2013) ("enforcement of valid forum-selection clauses, bargained for by the

1    parties, protects their legitimate expectations and furthers vital interests of the justice system."

2    (citation omitted)); (Yakura Decl. ¶ 25). In both its original and amended applications, NCD

3    neglected to mention that the Services Agreement on which the underlying litigation turns

4    contains a forum-selection clause providing that "the Tokyo District Court shall be the court with

5    exclusive jurisdiction over any lawsuit *and other legal proceedings* arising from or relating to this

6    Agreement." (*See* Yakura Decl. Ex. 2 § 21.2.) NCD's discovery request is certainly a "legal

7    proceeding[] arising from or relating to th[e Services] Agreement." NCD and Tohoku bargained

8    for the benefits and burdens of the Tokyo District Court, and *only* the Tokyo District Court,

9    including (of course) the discovery tools available in it and *only* those, and this Court should

10   account for the forum-selection clause in its re-weighing of discretionary factors. *See Heraeus*

11   *Kulzer*, 633 F.3d at 595 ("a forum-selection clause . . . might indicate the parties' preference for a

12   court system that doesn't contemplate the level of compulsory process available in America . . .

13   .").

14        This Court should not take any action that would "potentially undermin[e] the Tokyo

15   court's management of its case." *In re Samsung Elecs. Co.*, No. 12-80275 LHK (PSG), 2013

16   U.S. Dist. LEXIS 10518, at *10 (N.D. Cal. Jan. 23, 2013) (denying Section 1782 assistance until

17   after Tokyo District Court could rule on identical discovery requests, and recognizing that

18   granting discovery could potentially undermine the Tokyo court's management of its case).

19             **d.    Factor 4:  The Subpoenas Are Unduly Burdensome Because All
20                     the Key Information Is Present in Japan and Their Scope Still
                       Exceeds This Court's Instructions.**

21        Finally, with respect to the fourth *Intel* factor, which considers whether the Subpoenas

22   contain unduly intrusive or burdensome requests, the Subpoenas undoubtedly do, even as

23   modified by the Court. The vast majority of the requests in the Subpoenas seek information

24   obtainable from a different source more direct, convenient, and less burdensome—namely, from

25   Tohoku. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007)

26   (quashing nonparty subpoena seeking communications equally in the possession of defendant and

27   nonparty); *id.* ("There is simply no reason to burden nonparties when the documents sought are in

28   possession of the party defendant."). The documents key to understanding Tohoku's decision to

1   terminate its Services Agreement with NCD are by definition in the possession of Tohoku.  As

2   EverStream and NCD agree, NCD should be able to obtain discovery from Tohoku.

3        Although NCD removed certain requests from its proposed subpoenas in accordance with

4   the Court's March 6, 2019 Order, it failed to make conforming changes to certain other requests

5   that should be required to comply with the Court's instructions.  For example, the Court rejected

6   NCD's proposed RFP No. 3 and Deposition Topic No. 5 because they sought information about

7   all ten projects and thus were not narrowly tailored to the Japanese litigation.  In the Document

8   Subpoena, RFP No. 3 seeks "Documents and Communications concerning Your termination of

9   the Service[s] *Agreements* with NCD." (emphasis added).[9]  As the Court recognized, NCD should

10  not be allowed to fish for evidence not directly relevant to the single Services Agreement at issue

11  in the underlying litigation in Japan.

12       Likewise, through the overly broad definition of "You" and "Your," NCD seeks

13  documents from foreign affiliates and investment entities.  Courts have held that Section 1782

14  "discovery requests are unduly burdensome to the extent they require [Respondent] to obtain

15  materials possessed by its foreign subsidiaries for production in the United States."  *Salcido-*

16  *Romo*, 2016 U.S. Dist. LEXIS 76584, at *10; *Nikon Corp. v. ASML U.S., Inc.*, No. MC-17-00035-

17  PHX-JJT, 2017 U.S. Dist. LEXIS 147354, at *10-11 (D. Ariz. Sept. 12, 2017), *aff'd sub nom.*,

18  *Nikon Corp. v. ASML U.S., Inc. (In re Pursuant to § 1782 to Take Discovery of ASML U.S., Inc.)*,

19  707 Fed. Appx. 476 (9th Cir. 2017) (granting the Section 1782 application only to documents

20  maintained by a domestic subsidiary in the United States, in that documents outside of the United

21  States were within the jurisdictional reach of the Dutch court where the litigation was pending).

22       In addition to seeking discovery from persons not residing or found in this District, failing

23  (despite the Court's directive) to limit discovery to the Services Agreement at issue in the

24  Japanese litigation, and seeking discovery of documents outside of the United States, the

25  Subpoenas remain overbroad in other respects.  For instance, the Document Subpoena seeks

26

27  _____
    [9] Both Subpoenas define "Service Agreement" and "Service Agreements" to mean "the contracts
28  entered into between NCD and SPCs for each project worked on for EverStream."

1    documents from January 1, 2017 to March 12, 2019, a period of over two years.  With respect to

2    NCD's asserted defenses, the only relevant period is the period from November 6, 2017 (when

3    Mr. Hoshino was forced to resign as director of NCD and ceased to be involved in NCD's

4    business) and March 6, 2018 (when Tohoku terminated the Services Agreement).  (*See* Hennessy

5    Decl. ¶¶ 22-24.)  Likewise, the Subpoenas seek documents and information about the third-party

6    majority investors in the Funds.  The "awareness, or lack thereof" on the part of EverStream's

7    investors (RFP No. 4) or EverStream's knowledge of its investors' "expectations" (Deposition

8    Topic No. 2) has no arguable relevance to the issues in dispute in the Japanese litigation.  (*See*

9    Yakura Decl. ¶¶ 13-14.)  Such investor-related requests are simply being used as a cudgel to

10   create leverage in the Japanese litigation.  The third-party investors are the lifeblood of future

11   project funding.

12          D.      **If the Court Orders Discovery, It Should Exercise Its Discretion to Make
                    Discovery Reciprocal.**

13

14          If this Court decides to permit NCD to proceed with Section 1782 discovery, it should

15   exercise its discretion to mandate reciprocal discovery to alleviate the stark one-sidedness of

16   Section 1782's operation here.

17          In *Intel Corp.*, the Supreme Court specifically held that "[w]hen information is sought by

18   an 'interested person,' a district court could condition relief upon that person's reciprocal

19   exchange of information."  542 U.S. at 262.  In *Esses v. Hanania (In re Esses)*, 101 F.3d 873, 876

20   (2d Cir. 1996), the Second Circuit noted that "Section 1782 grants district courts wide discretion

21   to determine whether to grant discovery and equally wide discretion to tailor such discovery to

22   avoid attendant problems[]," and held that "in carefully crafting an order for reciprocal discovery

23   between David and Linda in light of the underlying dispute between them, Judge Baer acted well

24   within his discretion in ordering discovery."[10]  Likewise, in *Minatec Fin. S.a.r.l. v. SI Grp. Inc.*,

25   No. 1:08-CV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802, at *28 (N.D.N.Y. Aug. 18, 2008),

26

_____

27   [10] *See also Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) (holding that
     "if the district court wished to insure procedural parity between MEPA and Esmerian, it could
28   have conditioned relief upon the parties' reciprocal exchange of information.").

1    the district court held that "[t]he flexibility of § 1782(a) allows a court to be creative in fashioning

2    relevant discovery mandates [including conditioning] relief upon a reciprocal exchange of

3    information, as such would lend parity to the disclosure mix."  The district court further held that

4    "[w]ith the authority to direct reciprocal discovery, we will do so[]" and ordered that "SI Group

5    [based in New York] shall have reciprocal discovery from Minatec [based in Luxembourg],

6    including depositions[.]"  *Id.* at *30.

7         In granting Section 1782 applications, courts in this District have also ordered reciprocal

8    discovery.  In *In re Bayer HealthCare LLC*, No. 14-mc-80138-WHA, 2014 U.S. Dist. LEXIS

9    186818 (N.D. Cal. July 1, 2014), Bayer HealthCare LLC, which is based in New Jersey, sought

10   discovery from Nektar Therapeutics, which is based in California.  Nektar argued that "any

11   discovery ordered should be reciprocal."  (*See* Order Re Pending Discovery Motions (June 16,

12   2014) (ECF No. 16 at 1); Motion to Quash (May 29, 2014) (ECF No. 13 at 7) ("Nektar submits

13   that discovery, if allowed at all, should be reciprocal.  Bayer cannot legitimately assert that

14   discovery from Nektar is critical to its case while at the same time refusing to provide discovery

15   of its own information on the identified topics.  The Court should thus ensure that the parties are

16   on equal footing with regard to discovery under United States laws.").)  The district court held

17   that "[t]he parties will exchange reciprocal discovery[]," including reciprocal Rule 30(b)(6)

18   depositions.  *In re Bayer*, 2014 U.S. Dist. LEXIS 186818, at *1, 4.

19        EverStream's proposed reciprocal requests seek documents related only to the information

20   Tohoku relied on to terminate the Services Agreement and information necessary to prove the

21   extent of damages:  (1) NCD's ownership structure and Mr. Oyama's representations about that

22   ownership structure; (2) Mr. Oyama's representations to EverStream regarding the circumstances

23   of Mr. Hoshino's departure from NCD; (3) NCD's actions to hinder or assist with the project after

24   termination; and (4) the particular project assets that NCD has refused to transfer to Tohoku, the

25   costs of those assets, and any other expenses NCD incurred in connection with performing the

26   Services Agreement.  These items are at the core of the litigation between Tohoku and NCD in

27   the Tokyo District Court.  (Yakura Decl. ¶ 26.)  EverStream's proposed deposition topics do not

28   exceed these items.  Reciprocal discovery is therefore appropriate.  *See In re Application of*

EVERSTREAM'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO QUASH NC
DENGEN KAIHATSU KK'S SUBPOENAS
Case No. 18-mc-80208-DMR
tk-728116

21

1   *Consorcio Minero, S.A. v. Renco Grp., Inc.*, No. 11 Mc. 354, 2012 WL 1059916, at *3-4

2   (S.D.N.Y. Mar. 29, 2012) (concluding that reciprocal discovery was appropriate because the

3   Section 1782 petitioner was not "found" in the United States and hence the respondent could not

4   bring its own Section 1782 action).  Since NCD is a Japanese company not found in any district

5   in the U.S., reciprocal discovery is even more appropriate.  *See id.* at *4.

6        Here, this Court should preserve parity and condition NCD's right to pursue discovery

7   from EverStream on NCD's agreement to produce all documents responsive to these narrow

8   proposed requests, and to testify at a deposition in the U.S. Embassy in Tokyo, Japan.  Copies of

9   EverStream's proposed document requests and deposition topics are attached hereto as Exhibits A

10  and B, respectively.

11  **IV.    CONCLUSION**

12       For the reasons above, EverStream respectfully requests that this Court quash, or in the

13  alternative modify the Subpoenas, and provide for reciprocal discovery.

14

15   Dated:  April 11, 2019                    MORRISON & FOERSTER LLP

16

17                                        By:  */s/ J. Alexander Lawrence*
                                               J. ALEXANDER LAWRENCE
18                                             (CA SBN 208715)
                                               ALawrence@mofo.com
19                                             AUSTIN MICHAEL UHLER
                                               (CA SBN 319684)
20                                             AUhler@mofo.com
                                               JANELLE HYUN
21                                             (CA SBN 324907)
                                               JHyun@mofo.com
22                                             MORRISON & FOERSTER LLP
                                               Shin-Marunouchi Building, 29th Floor
23                                             5-1, Marunouchi 1-Chome
                                               Tokyo, Chiyoda-ku  100-6529, Japan
24                                             Telephone: +81 3 3214 6522
                                               Facsimile: +81 3 3214 6512
25
                                               Attorneys for Respondent
26                                             EVERSTREAM ENERGY
                                               CAPITAL MANAGEMENT LLC
27

28

# Exhibit A

## DOCUMENTS REQUESTED

1.      Documents concerning the Ownership Structure of NCD, from its incorporation on June 6, 2013, until the present.

2.      Documents concerning Mr. Oyama's representations about the Ownership Structure of NCD.

3.      Documents concerning Mr. Oyama's reasons for removing Mr. Hoshino from NCD.

4.      Documents concerning assets or legal rights held by NCD that were acquired in connection with the solar project owned by Tohoku, including but not limited to rights to the land identified in Attachment 2 to the Services Agreement as lot numbers 3, 4, 5, 6, 79-1, 69-2, 91, and 92.

5.      Documents concerning development expenses or costs incurred by NCD in connection with its performance of the Services Agreement.

6.      Documents concerning any actions taken by NCD in compliance with Section 14.3 of the Services Agreement since Tohoku delivered its Notice of Termination and Breach on March 6, 2018.

7.      Documents concerning any actions taken by NCD concerning the project owned by Tohoku since Tohoku delivered its Notice of Termination and Breach on March 6, 2018.

## DEFINITIONS

1.      The term "Documents" is used in the broadest sense allowed by the Federal Rules of Civil Procedure and includes, but is not limited to documents and electronically stored information, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, whether embodied in a communication or not, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

2.      The term "Ownership Structure of NCD" refers to the identity of NCD's shareholders and the number of shares of NCD held by each shareholder.  Such term includes without limitation the identity of the shareholders of each company holding shares in NCD and the number of shares of that company that each of that company's shareholders hold, and so on, until the individuals ultimately owning beneficial shares of NCD and their relative ownership of NCD can be determined. Such information includes without limitation details about the shareholdings described in Article 6 of the Project Sourcing Agreement, dated November 14, 2016, between ES NPV Holdings II, LP, NCD, Akinori Oyama, and Atsushi Hoshino.

tk-729250

3.    "NCD" refers to NC Dengen Kaihatsu KK.

4.    "Mr. Oyama" refers to Mr. Akinori Oyama.

5.    "Mr. Hoshino" refers to Mr. Atsushi Hoshino.

6.    "Tohoku" refers to Tohoku Eco Power Station GK.

7.    "The Services Agreement" refers to the Amended and Restated Services
       Agreement, dated August 2, 2016, between Tohoku and NCD.

## <u>INSTRUCTIONS</u>

1.    Each paragraph of this request covers Documents in the possession, custody, or
       control of NCD.

2.    With regard to any document withheld by you, such as on the basis of a claim of
       attorney-client privilege or work product protection or some other form of
       immunity, identify the document by its:  date; type (e.g. email); subject matter;
       author or originator; addressee or addressees; and the alleged ground or grounds
       for withholding production (e.g., attorney-client privilege), within a reasonable
       timeframe.

# Exhibit B

## DEPOSITION TOPICS

1.  The Ownership Structure of NCD, from its incorporation on June 6, 2013, until the present.

2.  Mr. Oyama's representations about the Ownership Structure of NCD.

3.  Mr. Oyama's reasons for removing Mr. Hoshino from NCD.

4.  Assets or legal rights held by NCD that were acquired in connection with the solar project owned by Tohoku, including but not limited to rights to the land identified in Attachment 2 to the Services Agreement as lot numbers 3, 4, 5, 6, 79-1, 69-2, 91, and 92.

5.  Development expenses or costs incurred by NCD in connection with its performance of the Services Agreement.

6.  Any actions taken by NCD in compliance with Section 14.3 of the Services Agreement since Tohoku delivered its Notice of Termination and Breach on March 6, 2018.

7.  Any actions taken by NCD concerning the project owned by Tohoku since Tohoku delivered its Notice of Termination and Breach on March 6, 2018.

## DEFINITIONS

1.  The term "Ownership Structure of NCD" refers to the identity of NCD's shareholders and the number of shares of NCD held by each shareholder. Such term includes without limitation the identity of the shareholders of each company holding shares in NCD and the number of shares of that company that each of that company's shareholders hold, and so on, until the individuals ultimately owning beneficial shares of NCD and their relative ownership of NCD can be determined. Such information includes without limitation details about the shareholdings described in Article 6 of the Project Sourcing Agreement, dated November 14, 2016, between ES NPV Holdings II, LP, NCD, Akinori Oyama, and Atsushi Hoshino.

2.  "NCD" refers to NC Dengen Kaihatsu KK.

3.  "Mr. Oyama" refers to Mr. Akinori Oyama.

4.  "Mr. Hoshino" refers to Mr. Atsushi Hoshino.

5.  "Tohoku" refers to Tohoku Eco Power Station GK.

6.  "The Services Agreement" refers to the Amended and Restated Services Agreement, dated August 2, 2016, between Tohoku and NCD.

tk-729242